LOCKHART *v.* LITTLE ROCK & M. R. Co. *et al.*

(*Circuit Court, W. D. Tennessee.* May 25, 1889.)

1. RAILROAD COMPANIES — TRAFFIC ARRANGEMENT — INJURIES TO EMPLOYES OF OTHER COMPANIES.

Where two railroads have a traffic interchange of cars, if one sets loaded cars on the track of the other at an unusual time of the night, and does not give notice, or put out danger signals of warning, whereby an employe of the other is killed by collision with the obstruction, it is liable in damages for the negligence.

2. SAME — INSTRUCTIONS.

It seems that both companies may be liable in such a case,—the deceased man's own company because it must furnish a clear track, or because the other company is *pro hac* its agent or servant in the matter; but where the court withheld a charge on that point this is not a discrimination by the court against the other company for which it is entitled to a new trial. A joint wrong-doer cannot complain that his companions in wrong escape liability as a ground for a new trial.

3. SAME — ORDINANCE LIMITING SPEED — RIGHTS OF EMPLOYES.

A municipal ordinance limiting the speed of engines passing through a city is generally for the benefit of strangers using the streets, and it is doubtful if the railroad employes can have the benefit in cases of collisions between trains; but certainly, if the rate of speed does not cause the injury, it is immaterial, especially where the victim of the accident is in no way in control of the engine, and not responsible for the speed.

4. SAME — MANAGEMENT BY TRUSTEES UNDER MORTGAGE.

Where the management of the road was at the time of the accident jointly in the hands of trustees of the mortgage and the company purchasing from them, under a contract retaining possession as a security for the purchase money, but also providing that the trustees should be indemnified for losses by negligence pending the transfer of the property under the contract, both are liable, and the plaintiff may recover against either, the verdict and judgment being moulded, under the Tennessee Code, to suit the circumstances.

5. MASTER AND SERVANT — CONTRIBUTORY NEGLIGENCE.

It is not contributory negligence if a switchman ride on the front foot-board of the switch-engine to which he is attached while *en route* to the work he has to do. It is not contributory negligence to ride in one place merely because by the accident it may have been demonstrated that some other place would have been safe.

At Law. On motion for a new trial.

On the trial of this case there was a verdict of $4,000 for the plaintiff. The court, in substance, charged the jury as follows: "If you find from the proof that the traffic agreements, usages, or customs between the railroad companies justified the Little Rock Company in delivering the cars on the main track of the Chesapeake Company at the time and place the cars were placed there, and without notice of the fact previously or at that time given to the Chesapeake Company, then the Little Rock defendants are not liable to this plaintiff, but the latter would certainly be liable to him, and you will so place your verdict. But if you find from the proof that the delivery was at a time and place and in a manner not authorized by the agreements, usages, or customs of dealing between the companies, then the Little Rock people alone are liable, and you will so place your verdict. Both would be liable if you find from the proof that by their agreements, customs, and usages in dealing about the transfer of cars to the tracks, or by their construction of such agreements, or by their neglect to make regulations that are reasonable and proper to prevent such delivery from obstructing this track, they caused this accident." The verdict was against the Little Rock Company and its trustees, but in favor of the Chesapeake Company.

*Turley & Wright,* for plaintiff.
*W. G. Weatherford,* for Little Rock & Memphis Railroad.
*Holmes Cummins,* for Chesapeake & Ohio Railroad.

HAMMOND, J., (*after stating the facts as above.*)  This seems to me a
very simple case in its main features, and so gross was the negligence of
the defendant the Little Rock & Memphis Railroad Company, by which
the plaintiff's intestate lost his life in a most shocking and horrible way,
that its humane counsel scarcely has the heart to deny it or defend
against it, zealously, earnestly, and ably, as he has struggled to find
some way to relieve it against the consequences of that negligence by in-
terposing other defenses than that of a denial of the negligence itself.
The facts are that the Little Rock & Memphis Company—I speak now
of the management, whichever of the defendants comprised that man-
agement, and without reference to that dispute—had a traffic arrange-
ment—whether by contract, usage, or custom, or by a combination of
all of these, is immaterial—with the other defendant company, the Ches-
apeake & Ohio Railroad, by which it delivered cars to the latter com-
pany and received cars from it.   These interchanges of cars were gener-
ally made on a portion of their neighboring tracks called "The Hole,"
but at certain hours in the day-time, and under restrictions not mate-
rial, perhaps, in this place, they might be made on the main tracks on
our levee, close to and parallel with each other.   The Little Rock people
being crowded for room in "The Hole," delivered certain loaded cars, ac-
cording to their usage, on the Chesapeake main track.   They were re-
turned, owing to some dispute between the respective clerks, to "The
Hole," and again returned to the main track, and yet again to "The
Hole," when at night, at a time not authorized by the contract, usage,
or custom, or any of them, and at a time never before used for that pur-
pose, the Little Rock yard-master, still pressed for room, set them on
the main track of the Chesapeake road, giving no notice whatever of do-
ing so to the Chesapeake people, and not putting out any danger signals.
The night was dark and murky, and by a most unfortunate combination
of circumstances a train of the Little Rock road, by chance, stopped on its
own track a few feet away and parallel to the other, with the locomotive
immediately over against these loaded cars that had been left on the Ches-
apeake track.   The smoke from this locomotive in great clouds envel-
oped the obstructing cars, and completely obscured them.   A switch-
engine of the Chesapeake road came along on its regular run of business,
running at a rate variously estimated at four, six, seven, nine, and ten
miles per hour by the witnesses.   On it, among others, was the plain-
tiff's intestate, a switchman, whose duty it was to accompany this en-
gine, riding on the foot-board in front of the head-bar of the engine,
placed there for the use of switchmen.   The blaze of the head-light from
the Little Rock locomotive further obscured the engineer's vision, and it
ran into the loaded cars, mashing the intestate to death.

Was there ever a more hopeless case against a railroad company?   I
think not.   The contributory negligence insisted on—and always the

company lays hold of any circumstance that may be at hand to suggest that defense—was that the intestate did not ride on that part of the foot-board at the rear of the engine, where he might have escaped.   So he would have escaped if by some factitious circumstance he had not been on the engine at all, or if he had engaged in practicing law, and never had been a switchman at all.   It is conceded that when throwing switches or otherwise engaged in front his duty called upon him and permitted him to ride on the front foot-board; but it is assumed that because the engine was *en route* to its work further down the track he should have ridden in rear while so *en route;* but by the same reasoning, if the collision through some other negligence of the defendant company had come from the rear, or if the engine in this very case had been running backwards, then the company would have said it was contributory negligence not to ride in front.   Always, on this plan of constructing contributory negligence for a bulwark of defense, the unfortunate victim should have been in that place shown by the circumstances to have been the safe place.   The court told the jury it need not consider the matter of contributory negligence, and this is clearly so, it seems to me.   These switchmen accompanying a switch-engine may ride on it anywhere, and cannot, as every one knows, often tell what they may be required to do in emergencies that may arise.   This man may have been wanted in front to couple to these very cars that brought him to his death, for all he might know, if the foreman had been going to drag them out of the way of trains, and he would have been so wanted if they had known they were there to endanger every life borne upon those rails until they were removed.   How did he know that the foreman was not engaged in some such errand, *en route,* or on some other that would call him to the front?   I should not dwell on this but for the desperation with which the contributory negligence was pressed at the trial, and the reference to the victim's being out of place, made in the brief on this motion.

Objection is made that the charge discriminates against the Little Rock Company as against the Chesapeake Company; but it does not seem to me amenable to that criticism.   The court thought both of them were liable, and was almost willing to so direct a verdict, but, mindful of the cases, one of which counsel for defendant cites,—*O'Neill* v. *Railroad Co.*, 1 McCrary, 505, 507,—which invoke caution about doing this, even on undisputed facts, because sometimes negligence is an inference of fact, notwithstanding there is no dispute as to the circumstances, which the jury should make, and not the court, I concluded to submit the question to the jury, expecting that both companies would be convicted by the jury, and would now unhesitatingly support a verdict against both.   The Chesapeake Company might have been held on the ground that, whatever cost or expense of inspection may be entailed, every railroad company owes to its passengers and employes whose lives are at stake a clear and unobstructed track for every train or car it puts in motion and orders on the rails with the assurance that there is a clear track; or, more certainly, perhaps, on the ground that by this traffic arrangement, whatever it be, for interchanging cars with another company, that other com-

pany is only its agent or servant in the use of the track and management of the business, the employes guilty of the negligent acts being *pro hac* its own employes; and the first company is therefore as much liable for the negligence of the employes of that other company as for that of any other of its own servants or agents. This does not relieve the servant or agent of his own liability, of course. Both are liable, just as the Little Rock Company's yard-master would be liable to plaintiff in this case as well as the Little Rock Company itself. Both are liable, all are liable, and ought to be, in such a case of gross negligence as this. But the court did not say this to the jury, and really that is the chief grievance of this motion for a new trial. The court did not so charge because plaintiff's counsel did not wish to embarrass, and, as he thought, somewhat imperil, his case with these, to him, very doubtful propositions. And inasmuch as the plaintiff could sue any one of those liable to him, and not sue any he chose to release, and might, if pressed to it, relieve himself of the embarrassment by dismissing as to the Chesapeake Company at the last moment; and inasmuch as none of the other defendants, and particularly the Little Rock Company, had the least concern about the liability or non-liability of the others,—I concluded that the plaintiff had the legal right to have his case against the Chesapeake Company put to the jury as he made it, and to decline to take a verdict, if one could be had, on these other grounds. It is a mere sentiment, growing out of the struggle of these two companies to throw the blame of this man's death on each other, to suppose that there was an unjust discrimination here. What concern is it to the Little Rock Company whether the Chesapeake Company is sued or not sued, held or not held? It does not in the least affect its own liability, does not mitigate it, or in any sense concern it. Therefore it has no right to complain, certainly no right to a new trial, because of the failure of justice against it as a joint trespasser. The only possible concern the court has felt has been lest this treatment might have prejudiced the *Little Rock Case*, and turned the jury against it; but it had a hopeless case anyway; the jury needed no turning or prejudice. The liability was clear, and not to be evaded. It was an indulgence to submit such a case to the jury. The Little Rock yard-master, on his own evidence in this case, ought to have been indicted and convicted of manslaughter; and if corporations were liable for such crimes, as they are for libel and the like, of their agents, then this corporation should have been punished for manslaughter.

The court does not comprehend how the question of excessive speed, so much argued on this motion, properly enters into the consideration of this case. It is quite plain that at any speed—whether the six miles allowed by the city ordinance, or less, or more—this man would have been killed. Whether running at six miles or less, the engineer could not have seen any better through the inwrapping smoke nor against the glare of the head-light, both caused by the Little Rock Company. These were not elements of its negligence, truly, but it estops them, somewhat at least, from insisting that the engineer of the switch-engine carrying the intestate to a certain death should have been able to see

through them. The speed did not in any legal or proper sense contribute to the death. And if it did, the speed was not under the control of the victim, and it was not his negligence, contributory or otherwise. It might make the Chesapeake Company liable to him, but does not relieve the Little Rock Company. It is not necessary, therefore, to consider—though I have carefully examined them—the cases on excessive speed, as tested by a municipal ordinance. All the cases except one are where the victims are strangers using the streets and highways, for whose benefit the ordinances are passed. Whether employes on the railroads, injured by collisions of trains with each other, can get any benefit of these ordinances is doubtful; but I do not go into that here, for the reasons stated.

Now, as to the various defendants representing the Little Rock Railroad and their respective liabilities, so much considered at the trial, before the trial on the pleas in abatement, and now again on this motion for a new trial, it may be said that these considerations seem quite immaterial. They constitute no defense that is anything other than a very barren technicality, on the facts here, however formidable they might be on other occasions. They remind one of the school game of "swapping jackets" to conceal the real culprit. It is always a difficult matter for the public or any one outside the management itself to tell who manages and controls a railroad on a particular day, if that company is operated by "trustees" or "receivers" or "bondholders," and the processes of reorganization and other like processes are going on in the courts, as was this company. Whether the "old company" or the "new company" or the "trustees" are in control is a perplexing problem, depending upon almost everything else than outward appearances. The tracks, equipments, trains, agents, officials, etc., are the same substantially, whether one or the other be in possession or control at the moment of the accident. Here there was resort had to introducing the "auditor" as a witness to show how he kept the books, as if it be a matter of book-keeping; and he could not tell. He kept his books in a certain way, as he was told, but at last the problem is to get at the respective interests, rights, contracts, etc. Is the representative of every man killed to hunt this up, and decide the complex questions of ownership, right of possession, and control involved in the very lawsuits brought to settle these questions? Sometimes he must do this, no doubt; but here he was relieved of it. He brought all the parties before the court, and it turns out that either of two or both are liable to him. Either the new company or the "trustees"—whether the latter individually or only as to trust property is again immaterial—are liable, and both may be. The precise fact is, perhaps, that the new company, under its contract of purchase from the "trustees," was in beneficial ownership and control, taking the earnings to itself, but all in the name of the trustees, who reserved or retained nominal and actual control of the management as a security that the new company would perform the stipulations of the contract, namely, deliver the bonds which constituted the purchase money, and indemnify the trustees against all debts like

this, incurred while the property was in this transition state. Now, it is true that we are not enforcing that indemnity at all, nor concerned with it as such; but the fact shows that these two owners were in joint possession and control at the moment of the accident, each according to his interest, whether as agents for each other or otherwise is immaterial here; for as to this plaintiff both are joint trespassers, and both or either are liable to him, and they can, *inter sese,* arrange to pay the judgment according to their contract, whichever satisfies it as to him. Why should the new company stipulate to indemnify the trustees against claims like this if they were not in control in fact? It is a fact showing that the beneficial ownership and management was with the new company, although the trustees remained in nominal possession, and this peculiarity of the situation can but make both or either of them liable to the plaintiff. Under our Tennessee Code the court and .ry have statutory power to mould the verdict and judgment in just such cases according to the right of the case. Mill. & V. Code, §§ 3687, 3688; *Knott* v. *Cunningham,* 2 Sneed. 204; *Parris* v. *Brown,* 5 Yerg. 267. There is no difficulty under this practice ·in rendering a verdict against both, to be satisfied by either, and such is the judgment in this case.

Overrule the motion.